UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY PAYNE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C&S WHOLESALE GROCERS, INC., a Vermont corporation, TRACY LOGISTICS, LLC, an unknown business entity, and Does 1 through 11, inclusive,<br><br>　　　　　Defendants. | No. 2:13-cv-02153-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiff Danny Payne ("Plaintiff") seeks relief from Defendants C&S Wholesale Grocers, Inc. ("C&S") and Tracy Logistics, LLC ("Tracy Logistics") (collectively "Defendants") for violations of the California Labor Code and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. Plaintiff originally filed his Complaint in the Superior Court of California, County of Los Angeles. On August 29, 2013, Defendants removed Plaintiff's case to the United States District Court for the Central District of California pursuant to the Court's diversity jurisdiction. On October 17, 2013, the case was transferred from the Central District of California to the Eastern District of California.

///

Presently before the Court is Plaintiff's Motion to Remand ("Motion").  Mot., Oct. 1, 2013, ECF No. 16.  For the reasons set forth below, Plaintiff's Motion is DENIED.[1]

## BACKGROUND[2]

Defendant Tracy Logistics has employed Plaintiff as a Warehouse Supervisor at its Stockton Facility since August 2011.  Generally speaking, Plaintiff alleges that he was hired by Defendants, misclassified as an "exempt" employee, and paid on a salary basis without any compensation for overtime hours worked, missed meal periods, or rest breaks.

Plaintiff further claims that he worked over eight hours per day, and/or more than forty hours per week during the course of his employment with Defendants.  According to Plaintiff, although Defendants knew or should have known that he was entitled to receive certain wages as overtime compensation, he did not receive such wages.  Plaintiff also asserts he did not receive all his rest and meal periods; nor did he receive one additional hour of pay when he missed a meal period.  Additionally, while Defendants knew or should have known that Plaintiff was entitled to receive at least minimum wages as compensation, he did not receive at least minimum wages for all hours worked.

Plaintiff goes on to allege that he was entitled to timely payment of all wages during his employment and to timely payment of wages earned upon termination of his employment, but he did not receive timely payment of these wages either during his employment or upon termination.  Likewise, Defendants did not provide Plaintiff with complete and accurate wage statements, although Defendants knew or should have known that Plaintiff was entitled to these statements.

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs pursuant to E.D. Cal. Local Rule 230(g).

[2] The following recitation of facts is taken, at times verbatim, from Plaintiff's Complaint.

Plaintiff also asserts that Defendants failed to keep complete and accurate payroll records.  Finally, Defendants falsely represented to Plaintiff that the wage denials were proper.  Instead, according to Plaintiff, these wage denials were improper and served the purpose of increasing Defendants' profits.

These claims were brought by a different plaintiff in a class action in state court, Tompkins v. C&S Wholesale Grocers, Inc., on February 3, 2011.[3]  On March 14, 2011, the defendants in the Tompkins action removed the case to federal court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  The Tompkins plaintiff then moved to remand the case, on the grounds that the operative complaint alleged an amount in controversy below the $75,000 threshold.  The Court granted the plaintiff's motion to remand, finding that there was insufficient evidence to show that the amount in controversy for the plaintiff's individual claims exceeded $75,000.  The defendants again removed the case to federal court on October 26, 2011, based on discovery conducted prior to that date.  The Tompkins plaintiff again moved to remand, and the Court again granted the plaintiff's motion on the grounds that the defendants had not met their burden of proving that the amount in controversy on the plaintiff's individual claims exceeded the jurisdictional threshold.

On June 15, 2012, after the Court remanded the case a second time, the Tompkins defendants deposed the named plaintiff in that case, David Tompkins.  On September 21, 2012, the defendants offered Mr. Tompkins a Joint Offer to Compromise under California Civil Procedure Code § 998(b)(2), in the amount of $75,001.00.  Mr. Tompkins accepted the Joint Offer on October 3, 2012.

The subject wage and hour claims were subsequently brought in a new class action, Bicek v. C&S Wholesale Grocers, Inc., No. 13-cv-00411, on behalf of the same putative class.  Bicek, which is also before this Court, is a class action which this Court has jurisdiction over pursuant to the Class Action Fairness Act.

---

[3] All facts relating to the Tompkins action are taken from Defendants' Opposition to Plaintiff's Motion to Remand.  ECF No. 14.

## STANDARD

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).  Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).

When a party brings a case in state court in "which the district courts of the United States have original jurisdiction," the defendant may remove it to the federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a).  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  A motion to remand is the proper procedure for challenging removal.  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge, 861 F.2d at 1393 (internal citations omitted).  Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the court must grant the motion for remand. Id.  Additionally, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

///

///

## ANALYSIS

Defendants removed the instant case pursuant to the Court's diversity jurisdiction. As set forth above, a district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

### 1. Citizenship

Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant. 28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).

Here, it is clear that Plaintiff is a citizen of California. The complaint alleges that "Plaintiff Danny Payne is an individual residing in the State of California." ECF No. 2-1 at 3. The Notice of Removal also states that "Plaintiff alleges that he 'is an individual residing in the State of California' . . . . Therefore, Plaintiff was domiciled in the State of California at the time he filed this action and is a citizen of California for the purposes of diversity jurisdiction in this matter.'" ECF No. 1 at 6-7.

C&S is a corporation, and thus has dual citizenship for diversity purposes. See 28 U.S.C. § 1332(c). A corporation is a citizen both of the state where it was incorporated and the state where it has its primary place of business. Id. Because C&S is incorporated in Vermont with its principal place of business in New Hampshire, it is a citizen of Vermont and New Hampshire for purposes of diversity jurisdiction.

Next is the issue of Tracy Logistics' citizenship. For purposes of diversity jurisdiction in a case removed pursuant to 28 U.S.C. § 1441, "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (citations omitted). Defendants' removal papers make clear that Tracy Logistics is diverse from

Plaintiff. ECF No. 1 at 7-8. Tracy Logistics is owned by its sole member, C&S Logistics of Sacramento/Tracy LLC, which in turn is wholly owned by its sole member, C&S Acquisitions LLC. C&S Acquisitions LLC is wholly owned by its sole member, C&S Wholesale Grocers, Inc., which is a citizen of both Vermont and New Hampshire. Tracy Logistics, like C&S Wholesale Grocers, Inc., is therefore a citizen of Vermont and New Hampshire.

Thus, because Plaintiff is a citizen of California, while Defendants are citizens of Vermont and New Hampshire, there is complete diversity between Plaintiff and Defendants.

### 2. Amount in Controversy

#### a. Defendants' Burden

Defendants contend that the standard for establishing the amount in controversy is a preponderance of the evidence. Plaintiff, on the other hand, takes the position that the Court lacks jurisdiction because he alleges that the amount in controversy for his individual claims is less than $75,000 and Defendants have failed to prove with legal certainty that the jurisdictional amount is met. Specifically, the Complaint states in the Jurisdiction and Venue allegations that "the 'amount in controversy' for the named Plaintiff, including claims for compensatory damages, restitution, penalties, and pro rata share of attorneys' fees is less than [$75,000]." Compl. at 2. No specific amount is stated in Plaintiff's prayer for relief. See Compl. at 19-23. The prayer for relief lists civil and statutory penalties; reasonable attorneys' fees and costs of the suit; actual, consequential, and incidental losses and damages; and other and further relief as the Court deems just and proper.

For the reasons set forth in the related case Cagle v. C&S Wholesale Grocers, Inc., No. 2:13-cv-02134, in the Court's Order issued February 19, 2014, ECF No. 24, the Court finds that the standard for determining whether Defendants meet their burden of establishing the amount in controversy is the preponderance of the evidence. Under this standard, "the removing party's burden is 'not daunting,' and defendants are not

obligated to 'research, state, and prove the plaintiff's claims for damages.'" <u>Behrazfar v. Unisys Corp.</u>, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting <u>Korn v. Polo Ralph Lauren Corp.</u>, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)).  When a "[d]efendant's calculations [are] relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy" is met.  <u>Id.</u> (citing <u>Neville v. Value City Dep't Stores, LLC.</u>, No. 07-cv-53-DRH, 2008 WL 2796661, *5-6 (S.D. Ill. July 18, 2008); <u>Eisler v. Med. Shoppe Int'l, Inc.</u>, No. 4:05CV2272 JCH, 2006 WL 415953, *2 (E.D. Mo. 2006)).

      **b.**  **Amount in Controversy Calculations**

   Plaintiff takes issue with Defendants' calculation of the amount in controversy for Plaintiff's overtime claim, asserting that "each figure required to calculate overtime damages (hours worked, workweeks, and salary) is offered by Defendants without any competent evidence."  ECF No. 16 at 9.

   However, in support of Defendants' Opposition to the Motion, Defendants offer Plaintiff's deposition testimony, as well as the declarations of certain C&S employees.  First, Christopher Clark, the Regional Director of Field Human Resources for C&S, testified that Plaintiff was employed at the Stockton facility for approximately 104 workweeks, from August 29, 2011, through the date of Clark's declaration, October 10, 2013.  Clark Decl. at 2-3.  From August 29, 2011, to August 29, 2013, Plaintiff earned an average salary of $28.16.  Clark Decl. at 2.  The Court accepts this, for purposes of calculating the amount in controversy, as sufficient evidence of Plaintiff's salary and number of weeks worked.

   Plaintiff testified that during his first year at the Stockton facility, he generally worked five days per week, from approximately 2:00 PM to 7:00 AM, or 17 hours per day.  Payne Dep. at 38-39.  He stated that he typically worked "15-, 16-hour days, sometimes longer."  Payne Dep. at 39.  Thus, for 52 weeks, beginning on August 29, 2011, the Court estimates that, at a minimum Plaintiff worked 15 hours per day, which

1  amounts to 20 hours overtime per week and 15 hours double time per week: (52 x
2  $28.16 per hour x 20 hours OT x 1.5 = $43,929.60) + (52 x $28.16 per hour x 15 hours
3  DR x 2 = $43,929.60).  Accordingly, for the first year of Plaintiff's employment alone,
4  there is $87,859.20 in controversy.  Plaintiff also testified that in the time that he in the
5  transportation office, for between six and eight months, he worked fourteen to fifteen
6  hours per day.  Payne Dep. at 205-07.  This additional time adds at least $29,286.40 to
7  the amount in controversy, calculated as follows: (26 weeks x 16 hours OT per week x
8  $28.16 x 1.5 = $17,571.84) + (26 weeks x 8 hours DT per week x $28.16 x 2 =
9  $11,714.56).
10    Plaintiff's primary Operations Manager, Norberto Caballery, testified that
11 "Mr. Payne typically worked and works, on average, 12 hours per day on each shift and
12 sometimes more."  Caballery Decl. at 3.  When Plaintiff switched to the day shift, he "got
13 an extra day," so he worked four days instead of five days per week.  Payne Dep. at
14 196.  However, the Court finds that there is inadequate evidence as to the number of
15 weeks that Plaintiff worked the day shift, and thus does not include this number in
16 calculating the amount in controversy.
17    Additionally, the Court accepts $4,000 as the amount in controversy for Plaintiff's
18 Non-Compliant Wage Statement claim and $500 as the amount in controversy for
19 Plaintiff's Failure to Keep Requisite Payroll Records claim, as Plaintiff does not dispute
20 these amounts.  See Mot. at 8-9.  The Court therefore finds that, at a minimum, the
21 amount in controversy is $121,645.60.  Defendants have therefore shown, by a
22 preponderance of the evidence, that the amount in controversy is over the jurisdictional
23 threshold of $75,000.  As such, Plaintiff's Motion is DENIED.
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For the reasons just stated, Plaintiff's Motion to Remand, ECF No. 16, is DENIED.

IT IS SO ORDERED.

Dated:  March 12, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT